**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**Case No: 8:26-cv-2581**

**NICHOLAS KRUEL,**

Plaintiff,

v.

**CITY OF TAMPA, a Florida municipal corporation, OFFICER NICHOLAS DISPARTI, individually, OFFICER ROBIN SARRASIN, individually, and OFFICER NICOLE SOUSA-PARALITICCI, individually,**

Defendants.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, NICHOLAS KRUEL, by and through undersigned counsel, files this Complaint against Defendants CITY OF TAMPA, a Florida municipal corporation, and OFFICER NICHOLAS DISPARTI, individually, OFFICER ROBIN SARRASIN, individually, and OFFICER NICOLE SOUSA-PARALITICCI, individually, and states as follows:

## INTRODUCTION

1. This is an action involving the violation of Plaintiff's federal civil rights by Defendants acting under color of state law and contains state causes of action pursuant to this Court's concurrent and pendant jurisdiction. The aggregate amount of damages claimed by the Plaintiff against all Defendants is in excess of $75,000.00.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution of the United States and pursuant to 28 U.S.C. §

1343(a)(3) in that this action seeks to redress the deprivation, under color of state law, of rights secured to the Plaintiff by the Fourth, and Fourteenth Amendments to the Constitution of the United States of America.

3. Plaintiff's Claims for relief are predicated on 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to Plaintiff by the Constitution and laws of the United States, and by 42 U.S.C. § 1988 which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

4. Venue is appropriate in this Court as the illegal acts alleged to have been committed by Defendants against Plaintiff occurred wholly within Hillsborough County, Florida.

5. A written notice of Plaintiff's claims asserted was submitted to the Tampa Police Department, the City of Tampa, and the Florida Department of Financial Services on or about September 16, 2025, a copy of which is attached hereto as **Exhibit A**. The City of Tampa responded on January 13, 2026, denying the claims, attached hereto as **Exhibit B**.

## PARTIES

6. Plaintiff, NICHOLAS KRUEL (hereinafter "Plaintiff KRUEL"), is a citizen of the State of Florida residing in Hillsborough County and is otherwise sui juris.

7. Defendant CITY OF TAMPA (hereinafter "Defendant CITY") is a municipal corporation duly organized under the laws of the State of Florida. At all times material hereto, the City owned, operated, managed, and controlled the Tampa Police Department ("TPD").

8. Defendant OFFICER NICHOLAS DISPARTI (hereinafter "Defendant Officer DISPARTI"), at all times material to this action, was employed by the City of Tampa as a sworn

law enforcement officer employed by TPD, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity.

9. OFFICER ROBIN SARRASIN (hereinafter "Defendant Officer SARRASIN"), at all times material to this action, was employed by the City of Tampa as a sworn law enforcement officer employed by TPD, acting within the course and scope of her employment and under color of state law. She is sued in her individual capacity

10. Defendant OFFICER NICOLE SOUSA-PARALITICCI (hereinafter "Defendant Officer SOUSA-PARALITICCI"), at all times material to this action, was employed by the Defendant City of Tampa as a sworn law enforcement officer employed by TPD, acting within the course and scope of her employment and under color of state law. She is sued in her individual capacity.

**FACTUAL ALLEGATIONS**

11. In the early morning hours of March 16, 2024, Plaintiff KRUEL was lawfully standing on a public sidewalk in the Ybor City neighborhood of Tampa, Florida, leaning against a tree and eating a slice of pizza while he waited for an Uber he had already requested through the Uber app.

12. Plaintiff KRUEL was in the company of a friend. He was not loitering and was not engaged in any criminal activity. Additionally, he had not been given any prior warning by law enforcement to disperse.

13. Defendant Officer DISPARTI approached Plaintiff KRUEL and gestured for him to walk down the sidewalk. Plaintiff immediately complied, turning in the direction indicated and began walking as instructed.

14. Without provocation and without any lawful justification, Defendant Officer DISPARTI then grabbed Plaintiff KRUEL from *behind* as he was complying with the instruction to walk away.

15. Defendant Officer SOUSA-PARALITICCI was also present at the scene. In a sworn affidavit, Defendant Officer DISPARTI and Defendant Officer SOUSA-PARALITICCI asserted that: "Upon a second approach law enforcement advised the defendant to leave again at which point in time he verbally and physically refused by staying stationary at his location." This statement is completely contradicted by the Body-worn camera ("BWC") footage which shows that Plaintiff KRUEL was in fact walking away, as instructed, in the moments immediately before Defendant Officer DISPARTI unlawfully seized him from behind.

16. It is clear, based on the BWC Footage, that at the time Defendant Officer DISPARTI unlawfully seized Plaintiff KRUEL, he was specifically targeting him, as there was at least one other individual who remained on the same sidewalk less than ten feet away throughout this violent interaction, as well as Plaintiff KRUEL's friend who continued to stand nearby as well without any interaction or verbal orders from the other TPD officers. Numerous other officers and citizens were present in the immediate vicinity, and yet none of those other citizens were approached, detained, arrested, nor attacked by the multiple other officers patrolling the area.

17. Having been suddenly and unexpectedly grabbed from behind, Plaintiff KRUEL instinctively, and very briefly, pulled away from Defendant Officer DISPARTI.

18. It is important to note, that an individual is allowed to resist an unlawful arrest, without violence.

19. Within seconds, two additional officers, Defendant Officer SOUSA-PARALITICCI and Defendant Officer SARRASIN, joined in the physical assault, forcibly

grabbing Plaintiff KRUEL, shoving him against a wall, placing him in a chokehold, and repeatedly punching him in the face and body.

20. During the struggle, the officers were, in substantial part, struggling against one another rather than against Plaintiff KRUEL, with each officer pulling Plaintiff KRUEL in a different direction simultaneously. As Defendant Officer DISPARTI applied a chokehold to Plaintiff KRUEL, Defendant Officers SOUSA-PARALITICCI and SARRASIN each yanked at Plaintiff KRUEL's arms, attempting to gain control, and struggled against each other's force, not Plaintiff KRUEL's.

21. Plaintiff KRUEL did not physically resist or threaten the officers with violence. Once Plaintiff KRUEL understood what was happening, he submitted to the officers after just a couple of seconds, notwithstanding being pulled in three different directions simultaneously. The resistance the defendants encountered was from each other, not from Plaintiff KRUEL.

22. At the time of this encounter, Plaintiff KRUEL had previously undergone open-heart surgery, was a cancer survivor, and had only one functioning kidney. Plaintiff KRUEL genuinely feared for his life during this violent encounter.

23. The force used against Plaintiff KRUEL, including striking him in the face and back, choking him, and forcibly restraining him, was objectively unreasonable and disproportionate to any conceivable threat or resistance posed by Plaintiff KRUEL and was not justified by any legitimate law-enforcement need.

24. Other citizens were standing and walking throughout the city streets and sidewalks, while law enforcement officers observed the foot traffic without incident or conflict. All other reasonable officers on the scene made the choice not to approach a citizen from behind who was following a lawful order.

25. In this case, answering the question of what another officer would do in the same circumstances is captured on the BWC's of Defendant Officers DISPARTI, SARRASIN, and SOUSA-PARALITICCI.

26. Under the exact same circumstances, not just hindsight, the other officers on the scene did not treat citizens as a threat, did not unlawfully arrest anyone, and did not use excessive force. That is because no crime was actively being committed, no crime was actively being investigated, and there were not any exigent circumstances presenting themselves to the Defendant Officers.

27. Notwithstanding the absence of probable cause or any lawful basis for the arrest, Plaintiff KRUEL was arrested and subsequently booked and charged with Resisting Officer with Violence, Disorderly Intoxication, and *Driving Under the Influence*, with a breath or blood alcohol level over .15, in *State of Florida v. Kruel*, Case No. 24-CT-004334, Hillsborough County, Florida. *See*, the attached Case Summary which lists one of Mr. Kruel's charges as Driving Under the Influence, attached hereto as **Exhibit C**.

28. At no point on March 16, 2024, was Plaintiff KRUEL operating or in actual physical control of any motor vehicle. To the contrary, Plaintiff KRUEL was in the process of waiting for an Uber specifically to avoid driving after consuming alcohol.

29. BWC footage corroborates Plaintiff KRUEL's account, confirms that he did not resist with violence, and confirms that the Defendant Officers' actions were disproportionate to and unnecessary under the circumstances.

30. As a direct and proximate result of Defendants' conduct, Plaintiff KRUEL suffered physical injuries including, but not limited to, eye pain and visual disturbances resulting from being punched repeatedly above his right eye, as well as ongoing back pain requiring chiropractic

treatment. Plaintiff KRUEL's treating physicians have attributed his ongoing headaches and visual disturbances to the physical trauma inflicted during the arrest and/or the extreme stress caused by the incident.

31. As a further direct and proximate result of Defendants' conduct, Plaintiff has been diagnosed with Post-Traumatic Stress Disorder and Generalized Anxiety Disorder and has suffered and continues to suffer severe emotional distress, humiliation, anxiety, and a loss of enjoyment of life.

32. As a further direct and proximate result of Defendants' unlawful arrest, Plaintiff was required to retain and pay for criminal defense counsel to defend against the baseless charges and has incurred medical expenses and other economic losses, all of which are continuing and are expected to continue into the future.

33. All criminal charges were eventually dropped by the Hillsborough County Office of the State Attorney.

34. Upon information and belief, the Defendant City failed to adequately train, supervise, and discipline TPD officers, including the individual Defendants, regarding the constitutional limits on the use of force and the requirement of probable cause prior to effectuating an arrest, and this failure was a moving force behind the violation of Plaintiff KRUEL's constitutional rights.

35. Defendant Officers DISPARTI, SARRASIN, SOUSA-PARALITICCI violated Plaintiff KRUEL's civil rights granted to him by the Fourth and Fourteenth Amendments of the United States Constitution by falsely arresting him and using an inappropriate level of force against him.

36. All of the foregoing violations of Plaintiff KRUEL'S civil rights caused him injury and damages. These violations were of the type and character as to which any reasonable person would be aware, and further, the law prohibiting such conduct as unconstitutional is clearly established in Florida, in the Federal Court of Appeals of the United States 11th Circuit, and under the case law of the U.S. Supreme Court.

**COUNT I – 42 U.S.C. § 1983: EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT AGAINST DEFENDANTS OFFICER DISPARTI, OFFICER SARRASIN, and OFFICER SOUSA-PARALITTICCI**

37. Plaintiff realleges and incorporates by reference paragraphs 1 through 36 as though fully set forth herein.

38. At all times material, Defendant Officers DISPARTI, SARRASIN, and SOUSA-PARALITICCI were acting under color of state law in their capacities as TPD officers.

39. The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right of individuals to be free from the use of excessive and unreasonable force in the course of an arrest or seizure.

40. The force used against Plaintiff KRUEL by Defendant Officers DISPARTI, SARRASIN, and SOUSA-PARALITICCI, including striking him, choking him, and forcibly restraining him, was objectively unreasonable under the totality of the circumstances, as measured by the standard set forth in *Graham v. Connor*, 490 U.S. 386 (1989), given that Plaintiff KRUEL posed no threat to the officers or others, was not actively resisting in any meaningful way, and any minor and instinctive reaction to being unexpectedly seized did not justify the level of force employed.

41. Defendant Officers DISPARTI, SARRASIN, and SOUSA-PARALITICCI, acted with reckless indifference to, and in callous disregard of, Plaintiff KRUEL's clearly established constitutional rights, of which a reasonable officer in their position would have been aware.

42. As a direct and proximate result of the excessive force employed by Defendant Officers DISPARTI, SARRASIN, and SOUSA-PARALITICCI, Plaintiff KRUEL suffered the physical injuries, economic losses, and non-economic damages described above.

WHEREFORE, Plaintiff KRUEL demands judgment against Defendant Officers DISPARTI, SARRASIN, and SOUSA-PARALITICCI for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court deems just and proper.

**COUNT II – 42 U.S.C. § 1983: FALSE ARREST/UNLAWFUL SEIZURE IN VIOLATION OF FOURTH AMENDMENT AGAINST DEFENDANTS OFFICER DISPARTI, OFFICER SARRASIN, and OFFICER SOUSA-PARALITTICCI**

43. Plaintiff realleges and incorporates by reference paragraphs 1 through 36 as though fully set forth herein.

44. The Fourth Amendment prohibits law enforcement officers from effectuating an arrest without probable cause.

45. Probable cause to arrest requires facts and circumstances sufficient to warrant a reasonable belief that a crime has been, is being, or is about to be committed. No such facts or circumstances existed here.

46. Plaintiff KRUEL was lawfully present on a public sidewalk, was not operating a motor vehicle, and was actively complying with Defendant Officer DISPARTI's instruction to walk away at the moment he was seized.

47. Defendant Officers DISPARTI, SARRASIN, and SOUSA-PARALITICCI seized and arrested Plaintiff KRUEL, and thereafter caused him to be charged with crimes, including Driving Under the Influence, without probable cause or any other lawful basis to believe Plaintiff KRUEL had committed any crime.

48. As a direct and proximate result of Defendants' unlawful seizure and arrest of Plaintiff KRUEL without probable cause, Plaintiff suffered the physical injuries, economic losses, and non-economic damages described above.

WHEREFORE, Plaintiff demands judgment against Defendant Officers DISPARTI, SARRASIN, and SOUSA-PARALITICCI for compensatory damages, punitive damages, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper

**COUNT III – 42 U.S.C. § 1983: MUNICIPAL LIABILITY FOR FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE AGAINST DEFENDANT CITY OF TAMPA**

49. Plaintiff realleges and incorporates by reference paragraphs 1 through 36 as though fully set forth herein.

50. A municipality may be held liable under 42 U.S.C. § 1983 where a policy, custom, or practice of the municipality, including a failure to adequately train, supervise, or discipline its officers, is the moving force behind a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

51. Upon information and belief, the Defendant CITY failed to adequately train TPD officers, including Defendant Officers DISPARTI, SARRASIN, and SOUSA-PARALITICCI regarding (a) the constitutional requirement of probable cause prior to effecting an arrest, and (b) the constitutional limits on the use of force during an arrest, including the risks inherent in multiple officers simultaneously attempting to restrain a single individual without coordination

52. Upon information and belief, this failure to train reflects a deliberate indifference by the Defendant CITY to the constitutional rights of persons with whom TPD officers come into contact, and was so obvious, and so likely to result in the violation of constitutional rights, that Defendant CITY policymakers can reasonably be said to have been deliberately indifferent to the need for further or different training.

53. The Defendant CITY's failure to train, supervise, and discipline its officers was a moving force behind, and directly and proximately caused, the violation of Plaintiff's Fourth Amendment rights described above

WHEREFORE, Plaintiff demands judgment against Defendant CITY OF TAMPA for compensatory damages, punitive damages, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper.

**JURY DEMAND**

A demand for a jury trial is hereby made.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed through the Florida Courts E-Filing Portal this 4th day of September 2026.

*/s Paul M. Aloise, Jr.*

**PAUL M. ALOISE, JR., ESQ.**
Florida Bar No. 127483
THE RUBIN FIRM
2055 S. Kanner Hwy.
Stuart, FL 34994
(772) 283-2004
(772) 283-2009 Facsimile
Primary Email: paloise@therubinfirm.com
Secondary Email: service@therubinfirm.com
dkrebs@therubinfirm.com